UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LARTHEY JENKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-CV-01809-NCC |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Larthey Jenkins ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 14), Defendant has filed a brief in support of the Answer (Doc. 19), and Plaintiff has filed a reply brief in support of the Complaint (Doc. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on January 6, 2016 (Tr. 146-54). Plaintiff was initially denied on March 30, 2016, and he filed a Request for Hearing before an

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") on June 2, 2016 (Tr. 81-92). After a hearing, by decision dated April 3, 2018, the ALJ found Plaintiff not disabled (Tr. 11-31). On August 27, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2009, and that Plaintiff has not engaged in substantial gainful activity since January 17, 2007, the alleged onset date (Tr. 16). The ALJ found Plaintiff has the severe impairments of coronary artery disease status post bypass graft and diabetes mellitus, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16-17). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform the full range of medium work[2] (Tr. 17). The ALJ found Plaintiff capable of performing his past relevant work as a cashier and custodian (Tr. 24). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (*Id.*). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails

---

[2] The regulations provide that "medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c). A job is classified as "light work" when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because

substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff asserts that the ALJ failed to fully and fairly develop the medical record (Doc. 14 at 5-14). For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 416.945(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations." *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox*, 495 F.3d at 619). "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360

F.3d 834, 838 (8th Cir. 2004) (citations omitted). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. 20 C.F.R. § 416.945(a)(3) ("before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary…."). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). "This duty is enhanced when the claimant is not represented by counsel." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994). However, the "duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

As a preliminary matter, the Court finds that the ALJ properly evaluated Plaintiff's subjective complaints.[3] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The

---

[3] Social Security Ruling ("SSR") 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

6

plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ found Plaintiff's "statements about the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 18). The ALJ specifically noted that the symptoms are "inconsistent with the medical evidence of record" and then continued to detail the medical evidence of record for nearly six pages (Tr. 18-23). An ALJ may determine that subjective complaints are not credible in light of objective medical evidence to the contrary. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). Of note, the ALJ also indicated that "the records consistently indicated he was noncompliant with medications and treating sources counseled him repeatedly about compliance" (Tr. 23). Indeed, as noted by Defendant and the ALJ, the records prior to Plaintiff's heart attack are replete with Plaintiff's noncompliance with his medication for his diabetes (Tr.

7

23, 42-43, 371, 482, 486, 541, 544-46, 548-50, 556, 574, 578-80, 586-88, 610-13). The ALJ may consider a failure to follow a course of treatment in determining whether a claimant may receive benefits. 20 C.F.R. §§ 404.1530, 416.930 (individual who fails to follow prescribed treatment without a good reason will not be found disabled). *See also Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (affirming where ALJ found that claimant's "credibility suffered from his refusal to take pain medication and his refusal to seek out even conservative treatments such as physical therapy"); *Wildman*, 596 F.3d at 966 (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control; claimant's noncompliance with a diet regimen prescribed by doctor contributed to a negative credibility determination). Additionally, the ALJ properly considered that Plaintiff falsely claimed that he "worked so hard that he pushed himself to a heart attack" when his earnings records did not support a stable or steady work history (Tr. 23, 50, 161). *Juszczyk v. Astrue,* 542 F.3d 626, 632 (8th Cir. 2008) (If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, deference is given to the ALJ's credibility determination). Thus, the Court finds that the ALJ's evaluation of Plaintiff's subjective complaints to be based on substantial evidence and consistent with Regulations and case law.

Similarly, the Court concludes that the ALJ's RFC determination is based on substantial evidence. As previously mentioned, the ALJ determined that Plaintiff had the RFC to perform the full range of medium work. Contrary to Plaintiff's assertion, the ALJ also properly provided a narrative discussion as to how the evidence supports the ALJ's RFC determination (Doc. 14 at 8). Specifically, the ALJ stated:

> In sum, the record indicates the claimant did have a myocardial infarction in December 2015 but he recovered quickly from this. Although he did require subsequent bypass grafting in October 2016, his treating cardiologist did not find this to be a condition that

> the claimant needed surgery for immediately and at that time. The claimant was functionally relatively well and he postponed the surgery to attend a family reunion. At hearing, he blamed the doctors for his condition, despite the fact that the records consistently indicated he was noncompliant with medications and treating sources counseled him repeatedly about compliance. The record suggests he was not compliant at times because he was not experiencing significant symptoms. The claimant testified he has difficulty standing for extended periods but he admitted he is able to ambulate. There is little evidence to show significant ongoing problems with circulation in his legs before and after his cardiac surgeries. His gait has consistently been normal. Although the claimant said he worked so hard that he pushed himself to a heart attack, earnings queries show he earned only $541 in 2014 and $6,364 in 2015. There is no indication the claimant is unable to perform the full range of medium work.

(Tr. 23). In addition to this summary paragraph, the ALJ conducted a thorough review of the medical record encompassing nearly six full pages (Tr. 18-23). *See* Social Security Ruling 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *Garrison v. Astrue*, No. 4:11CV1503 FRB, 2012 WL 4336202, at *15 (E.D. Mo. Sept. 21, 2012) (noting that neither the Eighth Circuit nor SSR 96-8p requires the RFC to be presented in "rigid" or "bullet-point format with each limitation immediately followed by a discussion of the supporting evidence").

Plaintiff nevertheless asserts that the ALJ failed to develop the record fully and fairly because she did not order a consultative examination to determine the extent Plaintiff's impairments affected his ability to perform work-related activities (Doc. 14 at 7). However, a consultative examination is not warranted when the ALJ can properly determine the RFC from the medical evidence provided. *Kamann*, 721 F.3d at 950. Plaintiff raises several distinct, yet intertwined, arguments in support of his assertion that there was insufficient evidence to support an RFC, that the ALJ failed to fully and fairly develop the record, and thus a consultative examination was required. The Court will address each in turn.

First, Plaintiff asserts that the ALJ failed to obtain the actual medical records from various emergency room visits and two hospital admissions despite being notified of the

existence of such records (Doc. 14 at 10 (citing Tr. 680-707. 710-15, 721-39)). Plaintiff submitted discharge summaries from these visits (Tr. 21). The ALJ considered the discharge summaries not to be "particularly useful" and suggested that the actual records "would more thoroughly document claimant's medical issues" (*Id.*). As noted by Defendant and admitted by Plaintiff, review of the referenced records indicates that most of them related to medical encounters and symptoms documented elsewhere in the record (*See* Doc. 20 at 2). Thus, Plaintiff directs that Court's attention to records regarding emergency treatment for chest pain and palpitations in August 2016 and emergency care for hyperglycemia in April 2017 (Doc. 14 at 11; Doc. 20 at 2). Indeed, on August 10, 2016, Plaintiff was discharged with instructions for his Chest pain and palpitations from the emergency room at Christian Hospital Northeast (Tr. 680-83). While Plaintiff's detailed records are not included here or elsewhere in the medical record, the discharge instructions indicate, "The doctor thinks there is only a very small chance your pain is caused by a life-threatening condition" and Plaintiff was discharged with instructions to follow up with his primary care physician (Tr. 680-81). Similarly, on April 11, 2017, Plaintiff was discharged with instructions for his hyperglycemia from the emergency room at Christian Hospital Northeast (Tr. 710-15). Plaintiff was again discharged with instructions to follow up with his primary care physician (Tr. 710-11). Plaintiff was not admitted to the hospital on either occasion.

Regardless, the ALJ sufficiently addressed both Plaintiff's heart disease and his diabetes. In fact, a majority of the ALJ's analysis addresses these two impairments. Of note, and previously addressed, the ALJ indicated that Plaintiff's diabetes was poorly controlled largely due to Plaintiff's non-compliance (Tr. 21). The ALJ found that there was no indication in the record of any limitations as a result of Plaintiff's diabetes but did note that Plaintiff reported

likely unrelated complaints of blurry vision (Tr. 20-21).  As for Plaintiff's heart disease, the ALJ found Plaintiff recovered quickly from his heart attack in December 2015 and postponed a subsequent heart surgery so he could attend a family (Tr. 22, 497).  Further, in April 2017, as noted by the ALJ, Plaintiff denied any chest pain or irregular heartbeat/palpitations and in May 2017 Plaintiff reported feeling much better with some shortness of breath with "heavy activities" (Tr. 22-23, 892, 1026).  His primary care physician concluded that "his symptoms are mostly likely related to deconditioning and perhaps some anxiety.  He certainly doesn't have a cardiac cause for his chest tightness" (Tr. 1026).  In fact, Plaintiff testified that, "[t]he heart is not really the problem" (Tr. 46).  Therefore, the ALJ's determination regarding Plaintiff's cardiac impairment and his diabetes are supported by substantial evidence.

Second, Plaintiff asserts that the ALJ failed to fully develop the record as to his sleeping issues.  Plaintiff noted on his application that he suffers from "trouble sleeping" and indicated during his hearing that he suffers from sleep apnea (Tr. 44, 62, 175).  Plaintiff also appears to have reported issues with sleeping on his function report, stating, "I can't sleep at night no more than 2 to 3 hr[s]" (Tr. 183).  However, the agency's medical consultant did not find Plaintiff's sleeping troubles to be a medically determinable impairment (Tr. 66, 72).  Plaintiff argues that he submitted a scheduling notice for an appointment with a sleep disorders center but that the ALJ did not mention sleep apnea as an impairment (Doc. 14 at 11-12).  Indeed, the record includes a notice from the Sleep Disorders Center at Northwest HeathCare indicating an appointment for a sleep test on November 28, 2016 (Tr. 707).  However, no other records address either the scheduling of the sleep test or the results from it.  Furthermore, contrary to Plaintiff's assertion, the ALJ expressly addressed Plaintiff's sleep apnea, stating, "[t]here is little evidence to support [Plaintiff's] testimony that he has sleep apnea but even if this is the case, there is no indication

11

that this causes more than mild functional limitations" (Tr. 17). Regardless, the ALJ properly addressed Plaintiff's impairment in her RFC analysis, addressing Plaintiff's testimony and finding that the symptoms he alleged were not supported by the record (Tr. 18, 20, 44, 296). Upon review of the entire record, the Court finds the ALJ's analysis to be supported by substantial evidence. The record is largely absent any reference to Plaintiff having any sleep disorders. It appears that Plaintiff was prescribed a CPAP machine, a common treatment for sleep apnea,[4] but was not using it (Tr. 885, 919). While Plaintiff did report daytime somnolence and occasionally indicated that he was fatigued, he was not diagnosed with any sleep disorder and many of these events appear linked to Plaintiff's cardiovascular condition (Tr. 296, 892, 909). Finally, of note, while non-binding on the Commissioner, it is telling that the Missouri Department of Social Services similarly did not find Plaintiff to suffer from any sleep related impairments (Tr. 164). *Hensley*, 829 F.3d at 935 (Determinations made by other agencies that a claimant is disabled are not binding on the Social Security Administration). Therefore, the ALJ's determination regarding Plaintiff's trouble sleeping is supported by substantial evidence.

Third, Plaintiff asserts that the ALJ failed to develop the record as to Plaintiff's back pain. The ALJ found that Plaintiff's back pain was not a medically determinable impairment because there were "no imagining studies or diagnoses of spinal impairment" (Tr. 17). Plaintiff's application for benefits included a reference to "deterioration of the spine" and a lumbar x-ray from November 2013 revealed "diffuse degenerative changes" (Tr. 175, 391). However, again contrary to Plaintiff's assertion, the ALJ expressly considered the x-ray but

---

[4] Sleep Apnea is a disorder characterized by recurrent interruptions of breathing during sleep due to temporary obstruction of the airway. A treatment for the disorder is the nightly use of continuous positive airway pressure (CPAP), which provides a steady flow of room air at low pressure through the nose to overcome intermittent upper respiratory obstruction. Stedman's Medical Dictionary, 55120 (2014).

found, that the "[l]umbar spine x-rays showed only diffuse degenerative changes but no fracture or subluxation" (Tr. 20, 391). Although Plaintiff asserts that the x-ray alone is sufficient to establish a medically determinable impairment, an impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 404.1513, 416.913 (effective until Mar. 26, 2017). While the x-ray indicates diffuse degenerative changes, it does not provide a diagnosis or otherwise establish an impairment. "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be." SSR 96-4p, 1996 WL 374187, at *1 (effective until Jun. 14, 2018). Thus, because the ALJ properly determined that Plaintiff's back pain was not a medically determinable impairment, the ALJ was not required to consider Plaintiff's alleged back pain when determining his RFC limitations. SSR 96-8p, 1996 WL 374184, at *2.

Even if the Court were to find that Plaintiff's back pain was a medical impairment, it nonetheless does not rise to the level of a severe impairment as nothing in the record indicates that Plaintiff's back pain significantly limits his physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921 (effective until Mar. 26, 2017). The x-ray at issue was taken after a November 1, 2013 motor vehicle accident and the records underlying his emergency room visit indicate that while he reported "lower lumbar tenderness" he showed normal range of motion and did not have any edema or tenderness (Tr. 388, 391). After receiving treatment in the emergency room, Plaintiff was discharged without a hospital admission (Tr. 389). In fact, the notes from the visit indicate that he was up and ambulating at the scene of the accident without any difficulty (Tr. 386). Plaintiff did not seek follow up with a physician regarding his alleged back pain. Plaintiff subsequently sought care from a chiropractor primarily for pain and stiffness in his neck, but also for pain and stiffness in his spine and pelvic

13

region (Tr. 295-349). In December 2013, the chiropractor noted that "full recovery was anticipated" with treatment but Plaintiff did not return for any additional care (Tr. 439). After the accident, Plaintiff frequently reported no back pain and was noted as having full or normal range of motion (Tr. 395-96, 428, 444, 473, 509, 612, 884, 892, 960-62). In fact, on the day of his admission for his heart attack in December 2015, Plaintiff "was out cutting trees" (Tr. 501). Plaintiff also reported the he has no problems with his personal care, that he can do his own laundry and ironing, that when he goes out that he goes out on his own, and that he can walk three blocks before needing to sit down (Tr. 184-88). The ALJ did not err in her step 2 analysis of Plaintiff's back pain. Regardless, a restriction to medium work properly encompasses any limitations as a result of Plaintiff's back pain supported by the medical record.

Finally, to the extent Plaintiff asserts that the ALJ has not met her "enhanced duty" to develop the record, the Court notes that Plaintiff waived representation (Tr. 141), indicated during the administrative hearing that there were not any outstanding medical records (Tr. 35), and did not otherwise object to the medical records (Tr. 38). The ALJ also conducted a lengthy colloquy at the administrative hearing detailing the potential benefits of counsel including insuring that the record is complete (Tr. 34). Furthermore, Plaintiff was represented by counsel before the Appeals Council but did not present any new evidence (Tr. 1-6, 8, 143).

In conclusion, the Court finds that the ALJ did not err in fairly and fully developing the record; a consultative examination was not required; and the ALJ's RFC determination is supported by substantial evidence

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

14

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 12th day of March, 2020.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE